Filed 7/16/15  P. v. Bates CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GILBERT JOSEPH BATES,<br><br>    Defendant and Appellant. | D065983<br><br><br><br>(Super. Ct. No. SCD192318) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

In 2005, Gilbert Joseph Bates pleaded guilty to one count of corporal injury to a cohabitant resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a)),[1] admitted suffering two strike priors under section 667, subdivisions (b) through (i), and stipulated to a sentence of 25 years to life imprisonment. The trial court imposed the stipulated sentence, and Bates remains in prison. Following the approval of Proposition 36, Bates petitioned the trial court to recall his sentence and resentence him as a second strike offender. (§ 1170.126, subd. (b).) The trial court found Bates eligible for resentencing under section 1170.126, subdivision (e), but it determined that resentencing Bates would constitute an "unreasonable risk of danger to public safety" under subdivision (f) of that section. The court therefore denied Bates's petition.

Bates appeals. He contends the trial court abused its discretion by finding that resentencing Bates would constitute an "unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) He also contends the subsequent approval of Proposition 47, which includes a specific definition of "unreasonable risk of danger to public safety," requires that this case be remanded to the trial court for reconsideration under that new definition. (See § 1170.18, subd. (c).)

We conclude the trial court did not abuse its discretion by finding that Bates's resentencing would constitute an "unreasonable risk of danger to public safety"

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

(§ 1170.126, subd. (f)), and the specific definition of that phrase in Proposition 47 does not apply retroactively to Bates's petition.[2] We therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2005, at the time of the offense for which Bates is currently incarcerated, Bates was in a relationship with Noemi Zermano. Bates and Zermano had an argument, and Zermano told Bates to stay away from their shared apartment. Zermano was afraid of Bates, and she had a friend stay with her. Bates came back to the apartment, entered through a window, and chased Zermano. Bates caught Zermano, who held on to a fence to try anchor herself. Bates grabbed Zermano by the neck and pulled her away from the fence, breaking her little finger. Bates then dragged Zermano through a courtyard. When she struggled, Bates threw Zermano over his shoulder and slammed her head onto the concrete pavement. She lost consciousness. Bates continued to drag Zermano, causing a large abrasion to her left side. In a rear parking lot, Bates strangled Zermano. She lost consciousness again. When Zermano awoke, Bates continued to have his arm around her neck. A neighbor attempted to calm Bates down, but he did not release Zermano until police arrived. The police arrested Bates, and paramedics took Zermano to the hospital. Bates was charged with one count of corporal injury to a cohabitant resulting in a

---

[2]    As we will explain, we assume, but explicitly do not decide, that Proposition 47's definition of "unreasonable risk of danger to public safety" applies to Proposition 36 petitions.

traumatic condition (§ 273.5, subd. (a)) and two counts of false imprisonment by violence, menace, fraud or deceit (§§ 236, 237, subd. (a)).[3]

The prosecution alleged that Bates had suffered two strike priors under section 667, subdivisions (b) through (i), and two prison priors under section 667.5, subdivision (b). These prior offenses occurred in 1996 and 2000. For the first strike and prison prior, Bates was convicted of kidnapping (§ 207, subd. (a)) and sentenced to five years in prison. Bates grabbed a former girlfriend, Jaime Lucero, while she attended a friend's barbeque. Bates punched Lucero several times and dragged her to a waiting car. Bates told Lucero " 'you are going to die today bitch.' " Bates drove Lucero to his grandfather's house, where Bates again threatened Lucero. Several hours later, Lucero was able to make a clandestine telephone call to police, who rescued her. For the second strike and prison prior, Bates was convicted of making a criminal threat (§ 422) and sentenced to four years in prison. Bates went to the workplace of his then-girlfriend, Leticia Contreras, and accused Contreras of having sex with her boss. Bates chased Contreras, who was pregnant at the time, and grabbed her. Bates pounded Contreras's head into a bulletproof glass window three times. When Contreras's boss attempted to call the police, Bates acted as if he had a gun and told Contreras and her boss he would kill them.

---

3     The facts in this paragraph are largely drawn from the probation report for Bates's offense.

Contreras's father arrived, and Bates dragged Contreras to the back of the building. Bates became distracted, and Contreras escaped.[4]

Bates initially pleaded guilty to the 2005 charges based on the trial court's indicated sentence of 12 years eight months' imprisonment. Upon further review, however, the trial court determined it could not dismiss Bates's strike priors and effectuate the indicated sentence. The trial court allowed Bates to withdraw his plea. After further negotiations, Bates pled guilty to one count of corporal injury to a cohabitant resulting in a traumatic condition (§ 273.5, subd. (a)), admitted suffering the two strike priors discussed above, and stipulated to a sentence of 25 years to life imprisonment. The trial court sentenced Bates accordingly.

Following the adoption of Proposition 36, Bates petitioned to recall his sentence and for resentencing. Bates argued he was eligible for resentencing under section 1170.126, subdivision (e), and resentencing would not pose an unreasonable risk of danger to public safety under subdivision (f) of that section. Bates contended his adult criminal history was "relatively short." In addition to the current offense and the two strikes discussed above, Bates had been convicted of misdemeanor interference with telephone lines and sentenced to 45 days in jail. (§ 591.) In that incident, Bates and Lucero (who was then Bates's girlfriend) began to argue. Bates threw a ketchup bottle at

---

4     The facts in this paragraph are largely drawn from the prosecution's opposition to Bates's petition for recall and resentencing in the trial court.

her. When Lucero attempted to call her mother, Bates pulled the telephone cord out of the wall and headbutted her.[5]

In his petition, Bates argued that his disciplinary record while incarcerated had been that of an "average" inmate. Bates had been involved in several fights and had been found with a makeshift weapon in his cell. However, Bates had been discipline-free for two years. He had received several laudatory chronos from corrections officers during that time. His California Static Risk Assessment for potential reoffense was "low." Bates also had completed a number of educational, religious, substance abuse and anger management courses. Bates had been conditionally accepted to a number of post-incarceration housing programs and had several conditional job offers.

Bates submitted a psychological evaluation prepared by Clark R. Clipson, Ph.D. Clipson reviewed Bates's criminal and disciplinary records, analyzed the results of several intelligence and personality tests, and performed a clinical interview of Bates. Clipson diagnosed Bates with stimulant use disorder, alcohol use disorder, and personality disorder. After reviewing Bates's risk factors, Clipson concluded that Bates had a "low-moderate" risk of committing a violent offense in the future.

The district attorney opposed Bates's petition. The district attorney conceded Bates was eligible for resentencing, but argued that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (e), (f).) The district

---

[5] Bates also had a number of juvenile adjudications, including disturbing the peace, false identification to a police officer, and violating curfew and probation.

attorney pointed to the violence of Bates's crimes and his continued violent record while in prison. For example, from 2006 through 2011, Bates was found guilty of possessing an inmate-manufactured weapon, participating in a race riot requiring use of force, battery on an inmate without a weapon requiring the use of force, refusing to obey lawful orders which resulted in cell extraction without force, and fighting (three times).

At the hearing on Bates's petition, the court heard argument from counsel. The court explained, "I want to make it clear that after a complete review of this record, I am well aware that I'm not making a decision solely based upon the historical figure [Gilbert] Bates as he existed at the time of the sentencing. It is Gilbert Bates who at the time of sentencing represented a certain risk to society and then the Gilbert Bates now as understood better through his behavior in the institution, through the efforts that he has made to rehabilitate himself and the Gilbert Bates as presented in the psychological evaluation that has been presented to me. [¶] This is not a case that I have decided lightly. I read this several times, and I have listened carefully to the arguments so as to hopefully put my understanding of what I read into a proper context."

The court found that resentencing Bates would pose an unreasonable risk of danger to public safety under section 1170.126, subdivision (f), and denied Bates's petition. Bates appeals.

DISCUSSION

I

"Proposition 36, the Three Strikes Reform Act of 2012, was approved by the voters in the November 6, 2012 General Election. Sections 667 and 1170.12 were

7

amended and section 1170.126 was enacted." (*People v. Jernigan* (2014) 227 Cal.App.4th 1198, 1203.) Among other things, Proposition 36 " 'created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)' " (*Jernigan*, at pp. 1203-1204; see *People v. Johnson* (July 2, 2015, S219454, S219819) ___ Cal.4th __ [2015 Cal. Lexis 4521, p. *9].)

Proposition 36 provides that if a petitioner is eligible for resentencing, "the petitioner shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g); see *People v. Brown* (2014) 230 Cal.App.4th 1502, 1510.)

"The meaning of 'unreasonable risk of danger to public safety' is made clear by reference to the examples of evidence the trial court may consider in making this

determination. To determine unreasonable risk, the trial court may consider any relevant evidence, including a defendant's criminal conviction history and record of discipline and rehabilitation while incarcerated." (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769 (*Garcia*).) "The critical inquiry, however, is not whether the risk is quantifiable, but rather, whether the risk would be 'unreasonable.' " (*Ibid.*) "[A] court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1303.) Instead, the standard of proof for the prosecution to prove that resentencing a petitioner under Proposition 36 would pose an unreasonable risk of danger to public safety is preponderance of the evidence. (*Id.* at p. 1305.)

Proposition 36 expressly vests the trial court with discretion to determine whether resentencing the petitioner would pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (f), (g).) We therefore review an order denying resentencing on that basis for abuse of discretion. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124 (*Rodrigues*).) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Ibid.*)

Bates has not shown the trial court abused its discretion by denying Bates's petition on the grounds resentencing him would present an unreasonable risk of danger to public safety. Bates's crimes, primarily perpetrated against women with whom he had a

9

relationship, involved willful and prolonged episodes of intense violence. Bates's current offense, from 2005, caused his victim to lose consciousness twice (from slamming her head into the pavement and from strangulation), to suffer a large abrasion on her left side (from dragging her through a concrete parking lot), and to break her little finger (from pulling her off a fence that she had grabbed to resist Bates's aggression). Bates's first strike, from 1996, involved kidnapping a former girlfriend, punching her multiple times, and telling her " 'you are going to die today bitch.' " Bates's second strike, from 2000, also involved death threats, this time against Bates's then-current girlfriend. Bates went to her workplace, pounded the victim's head against a bulletproof glass window three times, and dragged her to the back of the building. The trial court was entitled to consider these crimes, and their viciousness, in determining whether resentencing Bates would present an unreasonable risk of danger to public safety. (§ 1170.126, subd. (g)(1).)

The trial court was also entitled to consider Bates's mixed record in prison. (§ 1170.126, subd. (g)(2).) For much of his time in prison for the current offense, Bates repeatedly violated prison rules, including for violent acts of fighting and battery. From 2006 through 2011, Bates was found guilty of possessing an inmate-manufactured weapon, participating in a race riot requiring use of force, battery on an inmate without a weapon requiring the use of force, refusing to obey lawful orders which resulted in cell extraction without force, and fighting (three times). While his last two years were discipline-free, and he had obtained several laudatory chronos and participated in rehabilitation, Bates's counsel in the trial court could only describe him as an "average" inmate.

10

Proposition 36 vests the trial court with the discretion to determine whether resentencing Bates would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) Given the evidence we have discussed, the trial court did not act " 'in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice' " when it found that resentencing Bates would pose such an unreasonable risk. (See *Rodrigues*, *supra*, 8 Cal.4th at p. 1124.) The court did not abuse its discretion by denying Bates's petition.

Bates criticizes the trial court for not stating reasons for its finding that resentencing Bates would pose an unreasonable risk. But Bates does not contend the statute at issue here, or any applicable rule of court, required a statement of reasons. We likewise see no such requirement. The Supreme Court's decision in *People v. Lock* (1981) 30 Cal.3d 454, 459, cited by Bates, is therefore inapposite.

Bates focuses on the report of his psychologist, who opined that Bates had a "low-moderate" risk of committing a violent offense in the future. Bates contends that the question on which his expert opined, Bates's risk of reoffense, was the same question the court was required to consider under section 1170.126, subdivision (f). The trial court, however, was not required to accept the opinion of Bates's expert. "The *fact finder* determines the facts, not the experts. Indeed, the fact finder may reject even 'a unanimity of expert opinion. "To hold otherwise would be in effect to substitute a trial by 'experts' for a trial by jury . . . ." ' " (*In re Scott* (2003) 29 Cal.4th 783, 823.) The same principle applies here. The trial court, not Bates's expert, was vested with the discretion to determine whether Bates's resentencing would pose an unreasonable risk of danger to

11

public safety. (§ 1170.126, subd. (f).) To find an abuse of discretion simply because the trial court gave little weight to Bates's expert's opinion would effectively eliminate the trial court's discretion. "Although experts may testify about their opinions, the fact finder decides what weight to give those opinions. This is especially important when the witnesses are not neutral court-appointed experts but experts hired by a party specifically seeking evidence supporting that party's position." (*In re Scott*, at p. 823.) Bates's contentions based on the prosecutor's comments are likewise unpersuasive because we review the trial court's order, not the prosecutor's stated reasons for opposing Bates's petition.

Bates also points to evidence of his rehabilitation, including insight into his crimes, while in prison. But, as we have discussed, the trial court was entitled to weigh this evidence against other factors bearing on the risk of danger to public safety in resentencing Bates, including the facts of his prior crimes and his disciplinary history in prison. (§ 1170.126, subd. (g); see *Garcia*, *supra*, 230 Cal.App.4th at p. 769.) The trial court did not act in an arbitrary and capricious manner by "rejecting" Bates's evidence of rehabilitation (or his expert's evidence), as Bates contends. The court was entitled to give this evidence the weight it saw fit.[6] Similarly, the trial court was not required to credit

---

6 We likewise disagree with Bates's contention that the trial court's order rests solely on "static" evidence concerning the nature of Bates's crimes. Additional evidence supported the order, as we have discussed, including Bates's disciplinary history while in prison. Similarly, we disagree with Bates's argument on reply that the Attorney General has tacitly conceded the court abused its discretion because the Attorney General did not address Bates's evidence of rehabilitation. In her opposition, the Attorney General set forth the evidence Bates contended supported his petition. The Attorney General then

12

Bates's interpretation of his prison disciplinary history which, in his view, demonstrated that Bates was targeted for violence for various reasons and was not predominantly the aggressor. In light of all the evidence, including the evidence cited by Bates, the trial court's finding that resentencing Bates would present an unreasonable risk of danger to public safety was reasonable. The trial court did not abuse its discretion by denying Bates's petition.

## II

"On November 4, 2014, the voters enacted Proposition 47, 'the Safe Neighborhoods and Schools Act' . . . , which went into effect the next day." (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089 (*Rivera*).) "Proposition 47 makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants. These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors)." (*Id.* at p. 1091.) "Proposition 47 also created a new resentencing provision: section 1170.18. Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47. (§ 1170.18, subd. (a).)" (*Id.* at p. 1092.)

---

addressed Bates's argument that evidence of his rehabilitation demonstrated his resentencing would not present an unreasonable risk of danger to public safety. We perceive no concession by the Attorney General.

13

In an manner analogous to Proposition 36, "[a] person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).)" (*Rivera*, *supra*, 233 Cal.App.4th at p. 1092.)

In contrast to Proposition 36, however, Proposition 47 provides a specific definition of the phrase "unreasonable risk of danger to public safety." Among the provisions added by Proposition 47 is the following: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The "new violent felony" offenses referenced in this provision include a narrow class of violent felonies, colloquially called "super strike offenses." (See § 667, subd. (e)(2)(C)(iv).)

Bates contends that the definition of "unreasonable risk of danger to public safety" contained in Proposition 47 applies to petitions filed under Proposition 36. He interprets the language "[a]s used throughout this Code" (§ 1170.18, subd. (c)) as evidencing an intent to apply the Proposition 47 definition to Proposition 36 as well. Bates further contends that he is entitled to the benefit of this new definition even though the court denied his Proposition 36 petition before Proposition 47 became effective.

We need not decide the question whether the Proposition 47 definition of "unreasonable risk of danger to public safety" applies to petitions under Proposition 36.

14

Even assuming, without deciding, that the definition does apply, we conclude the definition does not apply *retroactively* to petitions under Proposition 36, like Bates's, that the trial court heard and decided prior to the effective date of Proposition 47.[7]

"Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear with respect to a particular statute, the Legislature's generally applicable declaration in section 3 provides the default rule: 'No part of [the Penal Code] is retroactive, unless expressly so declared.' [The Supreme Court has] described section 3, and its identical counterparts in other codes (e.g., Civ. Code, § 3; Code Civ. Proc., § 3), as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic

---

[7] Both issues raised by Bates, regarding the applicability and retroactivity of Proposition 47's definition of "unreasonable risk of danger to public safety," are currently pending before the Supreme Court. (*People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2014, S223825 [applicability]; *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676 [retroactivity].) This court recently decided a related issue regarding the retroactivity of the substantive provisions of Proposition 47 that reduce certain felony offenses to misdemeanors. (*People v. DeHoyos* (June 30, 2015, D065961) ___ Cal.App.4th ___ [2015 Cal.App. Lexis 582].) In *DeHoyos*, this court determined that ballot materials and other indicia of the electorate's intent showed that the electorate intended those provisions to operate only prospectively. (*Id.* at p. *5.) Because *DeHoyos* did not consider Proposition 47's definition of "unreasonable risk of danger to public safety," *DeHoyos*'s analysis, while informative, does not apply directly to the question presented in this case.

15

sources that the Legislature . . . must have intended a retroactive application.' " (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*).)[8]

The same general rule applies to statutes, like Proposition 47, enacted through the initiative process: "It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the *electorate*, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287, italics added (*Tapia*).) The rule likewise applies where, as here, the new statute becomes effective while the judgment or order is on appeal, and is therefore not final. (*People v. Gonzalez* (2012) 210 Cal.App.4th 724, 736 (*Gonzalez*) [statute enacted while appeal pending not retroactive].)

In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), the Supreme Court discussed a significant exception to this general rule disfavoring retroactivity. The court held that, under certain circumstances, an implied legislative intent in favor of retroactivity may be found: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as a punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which

---

[8]     The rules governing the retroactivity of statutory enactments differ from the rules applicable to judicial decisions: " 'Unlike statutory enactments, judicial decisions . . . are generally applied retroactively.' " (*People v. Welch* (1999) 20 Cal.4th 701, 732, fn. 4; see *People v. Guerra* (1984) 37 Cal.3d 385, 399-402 [discussing retroactivity in the context of judicial decisions].)

16

it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.  This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at p. 745.)

In *Brown*, the Supreme Court explained its current understanding of *Estrada*'s effect on the general rule disfavoring retroactivity.  *Estrada* "supports an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively:  When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*Brown*, *supra*, 54 Cal.4th at p. 323, fn. omitted.)  The Supreme Court emphasized that ". . . *Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*Brown*, at p. 324.)

Bates does not point to any portion of Proposition 47 that expressly provides that its definition of "unreasonable risk of danger to public safety" should apply

17

retroactively.[9]  The ordinary presumption against retroactivity therefore applies.  (§ 3; *Brown*, *supra*, 54 Cal.4th at p. 324; *Tapia*, *supra*, 53 Cal.3d at p. 287.)  Even if Proposition 47 were ambiguous regarding retroactivity, it would normally be construed to be unambiguously prospective.  (See *Brown*, at p. 324.)

Bates therefore relies on the *Estrada* exception.  Bates argues that Proposition 47's definition of "unreasonable risk of danger to public safety" is "indisputably a more lenient standard of dangerousness" because it limits the trial court to an assessment of the petitioner's likelihood of committing a specified class of violent felonies.  (See § 1170.18, subd. (c).)  Because, in Bates's view, this new definition benefits him, he argues that *Estrada* requires its retroactive application to his petition.

We disagree that the *Estrada* exception should apply here.  *Brown* made clear that *Estrada* applied where the newly-enacted statute was " ' "[*a*] *legislative mitigation of the penalty for a particular crime*" ' " such that, absent a desire for " ' "vengeance," ' " the Legislature must have intended retroactive application.  (*Brown*, *supra*, 54 Cal.4th at p. 324, quoting *Estrada*, *supra*, 63 Cal.2d at p. 745.)  Neither of these circumstances apply to the statute at issue here.

First, Proposition 47's new definition of "unreasonable risk of danger to public safety" is not a "legislative mitigation of the penalty for a particular crime."  (*Estrada*, *supra*, 63 Cal.2d at p. 745; see *Brown*, *supra*, 54 Cal.4th at p. 324.)  Proposition 47's

---

9    We reiterate that our holding rests on the *assumption* that Proposition 47's definition applies to petitions under Proposition 36.  We explicitly do not decide that question because it is unnecessary to our decision.

definition does not address punishments or penalties at all. Instead, it provides a specific definition for courts to apply in assessing the unreasonableness of the danger to public safety that resentencing a petitioner like Bates would create. Nor is the definition limited to a particular crime. The definition would apply across a large class of petitioners who have been convicted of any number of nonserious and nonviolent felonies. (See § 1170.126, subd. (b) [defining eligibility for Proposition 36 relief as any three-strike offender who was convicted "of a felony or felonies that are not defined as serious and/or violent felonies"].)

Second, applying Proposition 47's definition only prospectively would not engender the same concerns over vengeance that motivated the *Estrada* court. (*Estrada*, *supra*, 63 Cal.2d at p. 745; see *Brown*, *supra*, 54 Cal.4th at p. 324.) *Estrada* explained that " '[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.' " (*Estrada*, at p. 745.) Upholding a harsher penalty, when the Legislature has impliedly determined that such a penalty no longer serves a penological goal when applied to a defendant's crime, would serve no legitimate purpose according to *Estrada*: " 'Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance.' " (*Ibid.*) Because Proposition 47's definition of dangerousness to public safety does not prescribe a new penalty for any particular crime, it did not create any " 'excess in punishment' " that would raise concerns over vengeance. (*Estrada*, at p. 745.) On the contrary, Proposition 47 simply narrowed

19

the discretion given trial courts to determine whether Bates's resentencing would constitute an unreasonable risk of danger to public safety. It did not declare, expressly or impliedly, that Bates's current sentence would serve no purpose other than a desire for vengeance.

Contrary to Bates's contention, not all statutes that benefit a defendant fall within the *Estrada* exception. *Brown* expressly rejected the argument that the *Estrada* exception "should be understood to apply more broadly to any statute that reduces punishment in any manner." (*Brown*, *supra*, 54 Cal.4th at p. 325; see *Gonzalez*, *supra*, 210 Cal.App.4th at p. 735.) As *Brown* explained, "We do not take issue with the proposition that a convicted prisoner who is released a day early is punished a day less. But, as we have explained, the rule and logic of *Estrada* is specifically directed to a statute that represents ' "a legislative mitigation of the *penalty for a particular crime*" ' (*Estrada*, [*supra*, 63 Cal.2d] at p. 745, italics added) because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to ' "satisfy a desire for vengeance" ' (*ibid*.)." (*Brown*, at p. 325.) This situation is not presented here.

As Bates points out, the *Estrada* exception has been applied in numerous contexts where the punishment for a particular crime has been lightened, the elements of proof required to convict a defendant of a particular crime have been broadened, or the defenses available to a defendant for a particular crime have been expanded. (See *People v. Wright* (2006) 40 Cal.4th 81, 94-95; *People v. Babylon* (1985) 39 Cal.3d 719, 722; *People v. Rossi* (1976) 18 Cal.3d 295, 299-302; *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1544-1546.) However, these authorities are inapplicable because they predate the

20

Supreme Court's interpretation of *Estrada* in *Brown* and because Proposition 47's definitional change does not fall into these categories where *Estrada* has previously been applied.

We therefore conclude that even assuming, without deciding, that Proposition 47's definition of "unreasonable risk of danger to public safety" applies to petitions under Proposition 36, the new definition in Proposition 47 should not apply retroactively here, where Bates's petition under Proposition 36 was heard and decided before the effective date of Proposition 47. In light of this conclusion, we need not consider whether Bates was prejudiced because the trial court did not use Proposition 47's definition. We also need not consider the Attorney General's alternative argument that Bates is not eligible for resentencing under Proposition 36 because he intended to cause great bodily injury during the commission of his current offense. (See §§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), 1170.126, subd. (e)(2).)

## DISPOSITION

The order is affirmed.

IRION, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.

21