Filed 4/19/16  P. v. Lopez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B262908 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA143618) |
| v. | |
| CARLOS LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Noah P. Hill, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Carlos Lopez, who had two prior convictions as defined in the three strikes law, was sentenced in 1988 to concurrent indeterminate terms of 26 years to life[1] following his convictions for unlawfully taking a vehicle (Veh. Code § 10851, subd. (a)) and grand theft (Pen. Code, § 487).[2] After the 2012 passage of Proposition 36 (the "Three Strikes Reform Act," hereafter "the Act"), defendant filed a petition under section 1170.126 to recall his indeterminate sentence and to be resentenced as a second strike offender. The trial court denied the petition, finding that defendant posed an unreasonable risk of danger to public safety.

Defendant contends the trial court applied an incorrect standard when evaluating whether he posed an unreasonable risk of danger to public safety. He argues that the narrow definition of unreasonable risk contained in section 1170.18, which was added by initiative measure Proposition 47 ("The Safe Neighborhoods and Schools Act") in 2014, applies to resentencing petitions under the Act, such as his, which were still pending at the time the initiative became effective.[3] He asserts that he does not pose an unreasonable risk of danger to public safety under either the standard the court applied or the one established by Proposition 47. Defendant further contends the trial court's determination of his unreasonable risk of danger to public safety was a factual finding enhancing his sentence, triggering his constitutional right to a jury trial and proof beyond a reasonable doubt.

---

[1] In 1999, this court affirmed defendant's convictions, but ordered the sentence on the grand theft conviction stayed pursuant to Penal Code section 654.

[2] All future statutory references are to the Penal Code unless otherwise specified.

[3] Under Proposition 47, "'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The phrase "unreasonable risk of danger to public safety" is not defined in the Act, but factors the court "may consider" include a defendant's criminal history, disciplinary record and record of rehabilitation, and any other evidence the court deems relevant. (§ 1170.126, subd. (g)(1)-(3).)

2

We affirm the court's order denying defendant's petition for resentencing. The issue of whether the Act's definition of unreasonable risk of danger to public safety was repealed and replaced with the standard in Proposition 47 is currently pending before the California Supreme Court.[4] For purposes of this appeal, we reject defendant's argument and conclude the People's position reflects the better view of the Act's definition of unreasonable risk of danger to public safety. (See *People v. Myers* (2016) __ Cal.App.4th __, 2016 WL 1072861 [filed March 17, 2016, Case No. C078277].) Because this case will be governed by our Supreme Court's ultimate resolution of the issue, we do not discuss it further.[5] We also hold that substantial evidence supports the trial court's findings on defendant's unreasonable risk of danger to public safety, and the trial court properly resolved the petition without a jury trial and by application of the preponderance of the evidence burden of proof.

## FACTS AND PROCEEDURAL HISTORY

**Strike Convictions and Commitment Offenses**

First Strike

On March 19, 1986, defendant was walking on the sidewalk toward the victim's brother and began harassing him without provocation. When the victim intervened,

---

[4] The issue of whether Proposition 47's definition of unreasonable risk of danger to public safety applies in Proposition 36 resentencing proceedings is pending before the California Supreme Court in *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted February 18, 2015, (S223676) and *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted February 18, 2015, (S223825).

[5] We need not discuss the argument in defendant's reply brief that the Act's definition of unreasonable risk of danger to public safety is unconstitutionally vague. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.) In any event, the contention has been rejected. (*People v. Garcia* (2014) 230 Cal.App.4th 763, 768-770.)

defendant threatened to kill him. Defendant pulled out a handgun and shot at the victim six times, striking him twice in the legs, before fleeing. Defendant was a member of the Florencia 13 criminal street gang at the time.

Defendant pleaded guilty to assault with a firearm and admitted the allegation that he used a firearm in the commission of the offense. The court imposed a sentence of six years in state prison.

Second Strike

On October 27, 1987, defendant argued with the victim over the sale of a $10 bag of marijuana before pulling out a gun, striking the victim in the head with it, and then shooting him four times. The victim died at the scene.

Defendant pleaded guilty to voluntary manslaughter and admitted the allegation that he used a firearm in commission of the offense. Two counts of armed robbery, one count of robbery, and two counts of assault with a firearm in incidents charged in the same information, but occurring on separate occasions, were dismissed. The court imposed a sentence of 13 years in state prison, to run concurrently with the six-year sentence imposed in defendant's first strike case.

Commitment Offenses

On January 1, 1997, the victim parked a van in front of his house. The van was missing the following morning. Police found the van a few blocks away in an alley, where defendant and another man were removing tools from it.

The jury convicted defendant of unlawfully taking a vehicle and grand theft of personal property. The trial court found true the allegations that defendant had suffered two prior serious felony convictions within the meaning of section 1170.12, and had served two prior prison terms within the meaning of section 667.5, subdivision (b). He was sentenced to concurrent terms of 26 years-to-life under the three strikes law.

4

**The Section 1170.126 Petition and Facts As Accepted by the Trial Court**

The Petition

On December 5, 2012, defendant filed a petition seeking recall of his three strikes sentence on the basis that his commitment offenses were not serious or violent felonies. On February 19, 2013, the trial court issued an order to show cause why the requested relief should not be granted.

Facts[6]

We set forth the facts in the light most favorable to the trial court's ruling,[7] beginning with the descriptions of defendant as found in the probation reports from the

---

[6] We recognize that defendant presented mitigating explanations for his conduct, and also presented opinion testimony by Richard Subia, who had 26 years experience working in the Department of Corrections and Rehabilitation, reaching high ranking positions within the Department. Subia concluded that defendant did not pose a current risk of danger to public safety. Subia downplayed defendant's criminal record and prison misconduct, but the trial court impliedly rejected Subia's theories. Subia was not a percipient witness to any of the events in this case, and the trial court's rejection of his opinion of the defendant's conduct and the findings of misconduct by prison authorities was well within the court's discretion as finder of fact.

In addition to Subia's opinion testimony, the parties stipulated that if defendant's mother were called she would testify that defendant's two brothers in Ensenada were prepared to provide him with food, housing, and employment in the family's construction business, assuming that he was deported. She would move to Ensenada to provide additional financial support. If defendant were allowed to remain in the United States his family living here would offer financial assistance. As discussed later in this opinion, the trial court did not credit this evidence in light of defendant's record of criminal offenses after deportation.

Our discussion focuses on the facts as found by the trial court.

[7] At the suitability hearing, the prosecution introduced tables of defendant's criminal history, disciplinary record in prison, and security classification scores, as well as defendant's California Law Enforcement Telecommunications System criminal

5

strike prior convictions and the commitment offenses. In the first strike case, the probation officer described defendant as follows:[8] "This 21 year old street gang member is violent, dangerous, callous, and life-threatening, and he does not deserve any kind of probation supervision." In the second strike case, the probation officer wrote: "This defendant, although merely 21 years old, appears hardened, calculating, and without remorse or conscience. His propensity for violence, as evidenced by his record is indeed frightening. . . . Indications are that he will kill again. He apparently habitually carries weapons (usually guns) and, from all indications, has a volcanic temper. . . . He is seen as vicious and antisocial and it is hoped that he can be kept in prison for the longest possible time prescribed by law." Finally, in the probation report on the commitment offense, the probation officer concluded: "The defendant has a lengthy and extraordinarily violent criminal history. He poses a grave threat to the community."

Defendant became a member of the Florencia 13 gang at age 13. He was on parole at the time of the commitment offenses. He had been deported on August 1, 1995, but returned to the country without permission and thereafter engaged in the commitment offenses.

Defendant's criminal history is not limited to the strike prior offenses and the commitment offenses. His criminal history also includes the following: a 1984 conviction for carrying a loaded firearm in public (§ 12031, subd. (a)); a 1985 conviction for carrying a concealed firearm on his person (§ 12025, subd. (b)); a 1985 conviction for possession of PCP for sale (Health & Saf. Code, § 11378.5); a 1985 arrest for ransom and extortion with an unknown disposition; a 1986 conviction for taking a vehicle without the

---

history, the court of appeal opinion on the commitment offenses, probation reports in connection with defendant's strike convictions, preliminary hearing transcripts relating to defendant's strike convictions, certification documents from the California Department of Correction and Rehabilitation (CDCR), reports pertaining to defendant's 11 prison rules violations, and defendant's CDCR reclassification score sheets for March 18, 1999, through April 30, 2014.

[8] Underlining in the quoted material appears in the District Attorney's opposition to defendant's petition.

owner's consent (Veh. Code, § 10851); and a 1987 conviction for unauthorized possession of marijuana or concentrated cannabis (Health & Saf. Code, § 11357). While incarcerated, defendant was arrested on three separate occasions in 1999 -- once for possession of a weapon while in state prison and twice for assault by a prisoner while in state prison. Defendant also had a juvenile record, including sustained Welfare and Institutions Code section 602 petitions in 1982 and 1983 finding that he possessed a knife on school grounds.

Defendant engaged in substantial misconduct in prison, where he was in Level IV placement[9] for almost his entire 16-year period of incarceration, and was housed in the Security Housing Unit (SHU) six times for violence. Defendant was found guilty of 11 rules violations while incarcerated, including: a stabbing assault of an inmate in 1994, possession of an inmate-manufactured weapon in January of 1999, battery on an inmate in April of 1999, battery on an inmate necessitating pepper spray in May of 1999, battery on an inmate with a deadly weapon in July of 1999, manufacturing of alcohol in 2000, delaying a peace officer in the performance of his duties in 2000, obstructing a peace officer in 2005, possession of dangerous contraband in 2006, attempted battery on a peace officer in 2008, and participation in a gang-related riot in 2011. Defendant received no qualifying points toward work, school, or vocational programs between September 29, 1999, and March 8, 2013. Defendant's security classification score had risen from 91 upon entry to the current score of 153, although his California Static Risk Assessment (CSRA) score was low, indicating that it was unlikely he would reoffend.

Among defendant's prison misconduct were the following incidents: in 1999, during a search of defendant's cell officers found eight inmate-manufactured weapons made from pencils that had been sharpened and taped together, along with 20 inmate-manufactured darts; also in 1999, defendant's cellmate was discovered standing at the door to his cell covered in blood, suffering from eight puncture wounds to his face, jaw, neck, shoulder area, upper arms and chest, three of which could be considered life-

---

[9] Level IV is the highest level of security in the prison system.

threatening; in April 1999, defendant ran up and began punching an inmate who was being stabbed by someone else; in May 1999 defendant and five other inmates attacked a single victim; in 2006, defendant was the sole occupant of a cell in which 10 pieces of metal aluminum stock, ranging from eight inches long and three inches wide to four and one-half inches long and one and one-fourth inches wide were found; and in 2008, defendant started an altercation with a prison guard by taking a "bladed stance."

Trial Court's Ruling

The court denied defendant's petition, finding by a preponderance of the evidence that defendant posed an unreasonable risk of danger to public safety. It considered defendant's criminal history, his disciplinary history while in prison, his minimal participation in rehabilitation, work, and education programs, his age, and his plan for transition after release. The court noted that certain immutable factors, including criminal history, are decreasingly predictive of future risk when an inmate has engaged in substantial rehabilitative programming. In this case, however, due to defendant's serious misconduct and lack of rehabilitative programming, his commitment offenses continued to be relevant. Defendant's institutional behavior, including 11 rules violations, one as recent as 2011, was indicative of current dangerousness. The rules violations "involved numerous incidents of actual violence, possession of inmate-manufactured weapon[s], possession of dangerous contraband, multiple incidents of battery on other inmates, a 2008 attempted battery on a peace officer[,] and the 2011 participation in a gang-related riot." As a result of his actions, defendant significantly increased his already high security classification score. The court took into account a laudatory report for defendant's work in the main kitchen, but also considered that defendant had "participated in no self-help programming that would help him gain insight into the causative factors for his criminal and violent past." Defendant had participated in minimal education programming since 1990, and had not earned his GED although he was now 48 years old. Any restrictions on his ability to participate in programming could

8

be attributed to his own conduct. Although defendant had a strong transitional plan and family support, he did not explain how this support system would help him avoid future violations of the law when it had failed in the past. Taking all of these factors into consideration, the court denied defendant's petition for recall of his sentence.

## DISCUSSION

### Court's Discretion

Defendant contends that the court abused its discretion when it determined that he posed an unreasonable risk of danger to public safety.[10] We disagree.

The Act gives the court broad discretion in determining whether the petitioner poses an unreasonable risk. It lists multiple factors that the court "may" consider, including the petitioner's criminal history (encompassing the nature of the crimes, injuries inflicted, length of sentence, and remoteness in time), his disciplinary record while in prison, and any efforts made at rehabilitation. (§ 1170.126, subd. (g).)

The trial court here considered all of these factors and found defendant's history contained strong indicia that he would pose an unreasonable risk of danger to public safety. The court considered defendant's long history of felonies involving violence. It reasonably found that although the crimes were remote, his convictions were still relevant in light of his subsequent violent history. Defendant entered prison with a high classification score of 91. In his 16 years of incarceration, his classification score never went below that initial number, but instead increased substantially, at one point reaching 165. Although the score decreased after defendant filed his petition, at the time of the hearing his score was still 149. Defendant had incurred 11 rules violations while in

---

[10] Defendant makes this argument with respect to his proposed unreasonable risk standard and the one the court applied. As noted earlier in this opinion, we reject defendant's proposed standard, and accordingly only review the trial court's decision under the standard set forth in the Act.

prison, including several for violence against other inmates. His most recent violation prior to filing his petition was for participation in a gang-related riot. He had merited SHU placement on multiple occasions. The court could reasonably conclude that defendant's ongoing pattern of violent behavior — beginning in 1986 and continuing through 2011—indicated that he posed an unreasonable risk to the public safety.

Although defendant had held jobs in prison and participated in a few educational classes, he had not participated in any rehabilitative programs and had not earned his GED. Defendant excused his lack of participation and meager educational progress as a product of his high security classification. As the court noted, defendant had earned his security classification with his own violent actions and misconduct, and had no one but himself to blame for the consequences.

The court acknowledged that defendant appeared to have a strong transitional plan and great family support, but this was not a sufficient basis to conclude he did not pose an unreasonable risk. Defendant had not explained why this impressive social network had not prevented him from re-offending repeatedly in the past. Absent an explanation, there was no reason to believe that the assistance of family and friends would keep him from re-offending in the future.

In light of defendant's long history of violence and his lack of participation in programs that would help to rehabilitate and prepare him for a successful re-entry into society, we cannot say that the trial court abused its discretion in determining that defendant posed an unreasonable threat of danger to public safety.

**Right to Jury Trial**

Finally, defendant contends that he had a constitutional right to have a jury decide whether he posed an unreasonable threat of danger to public safety beyond a reasonable doubt under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny. He admits that his position has been rejected in appellate court decisions, but asserts that those cases were wrongly decided. We agree with our sister courts that there is no such

10

constitutional right.  (See *People v. Myers*, supra, __ Cal.App.4th __ , WL 1072861; *People v. Berry* (2015) 235 Cal.App.4th 1417, 1428; *People v. Brimmer* (2014) 230 Cal.App.4th 782 (*Brimmer*).)

"Considered in conjunction with each other, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution require that each element of a crime or sentence enhancement be proved to the jury beyond a reasonable doubt.  (*United States v. Gaudin* (1995) 515 U.S. 506, 509-510; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Jones* (1999) 75 Cal.App.4th 616, 631.)  *Apprendi* states that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (*Apprendi*, *supra*, 530 U.S. at p. 490.)  . . .  [I]n *Blakely v. Washington* (2004) 542 U.S. 296, the high court clarified that the 'prescribed statutory maximum' for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' (*Id*. at p. 303, italics omitted.)  And in *Alleyne v. United States* (2013) 570 U.S. —— [133 S.Ct. 2151] the same court declared that a fact which increases the mandatory minimum sentence must likewise be submitted to a jury, and proved beyond a reasonable doubt.  (*Id*. at p. —— [133 S.Ct. at p. 2154].)  The high court in *Cunningham v. California* (2007) 549 U.S. 270, further explained that, 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' (*Id*. at p. 281.)" (*Brimmer*, *supra*, 230 Cal.App.4th at pp. 803-804.)  However, the Supreme Court has also held that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do[es] not apply to limits on downward sentence modifications." (*People v. Esparza* (2015) 242 Cal.App.4th 726, 739 (*Esparza*), citing *Dillon v. United States* (2010) 560 U.S. 817, 828 (*Dillon*).)

Defendant's argument is predicated on his assertion that section 1170.126 created a presumptive two strike sentence, which can be increased to an indeterminate three

strike sentence only if it is found that the petitioner poses an unreasonable threat of danger to public safety.  We reject defendant's interpretation of the statute.  Section 1170.126, subdivision (f) states that an inmate who has otherwise met the eligibility criteria "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety."  It "does not state that a petitioner eligible for resentencing has his sentence immediately recalled and is resentenced to either a second strike term (if not dangerous) or a third strike indeterminate term (if dangerousness is established)." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1302 (*Kaulick*).) Thus, "dangerousness is not a factor [that] enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle [that] must be crossed in order for a defendant to be resentenced at all.  If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced." (*Kaulick*, *supra*, at p. 1303, fn. omitted.)  "Simply put, a denial of an inmate's petition does not increase the penalty to which that inmate is already subject, but instead removes the inmate from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled.  That the denial is based on a determination of dangerousness does not change that conclusion." (*Esparza*, *supra*, 242 Cal.App.4th at p. 740.)  Because section 1170.126 may only decrease an inmate's sentence, the Sixth amendment is not implicated.  (See *Dillon*, *supra*, 560 U.S. at p. 828; *Esparza*, *supra*, 242 Cal.App.4th at p. 739; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1040 (*Osuna*).)  Accordingly, "a trial court need only find the existence of a disqualifying factor by a preponderance of the evidence.  (Evid. Code, § 115; see *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305.)" (*Osuna*, *supra*, at p. 1040.)

## DISPOSITION

The order denying defendant's petition for recall of sentence is affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.

BAKER, J.