[No. C074279. Third Dist. Oct. 16, 2014.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO JOSEPH GARCIA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

**COUNSEL**

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—Defendant Armando Joseph Garcia appeals from the trial court's denial of his petition for resentencing under the Three Strikes Reform Act of 2012 (the Act).[1] The court based the denial on its finding that defendant poses "an unreasonable risk of danger to public safety" if released. The bases for its finding were defendant's "nonstop criminal history" that included violent felonies (two robberies), two escapes from confinement, an 18-year prison commitment, which he served, and upon his release, two arrests, one for brandishing a weapon, and the relatively recent timing of his current offense (receiving stolen property) in 2007.

Defendant contends on appeal the Act is unconstitutionally vague because the term "unreasonable risk of danger to public safety" is not adequately defined. We disagree.

As we explain, the term "unreasonable risk of danger to public safety" is clear because it can be objectively ascertained by reference to the

---

[1] Penal Code section 1170.126. Further section references are to this code.

examples of evidence the trial court may consider in making this determination. These examples are: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant's current offense for which he has been incarcerated under the three strikes law was receiving stolen property. It was committed in December 2007. He and his wife acted as lookouts while another person burglarized a home. When police tried to handcuff him, defendant attempted to pull free, requiring two officers to restrain him with pepper spray. Defendant had a stolen camera on him. Police found a stolen rifle in the orchard across the street from the burglarized home. Defendant was charged with first degree residential burglary, grand theft of a firearm, receiving stolen property, and some misdemeanors. He pled guilty to receiving stolen property and admitted prior strikes for a stipulated sentence of 25 years to life in prison.

Defendant's criminal history began about 30 years before, with felony receiving stolen property in 1980, for which he was placed on probation. A year later, in 1981, he committed second degree burglary and was sentenced to prison for 16 months. In February 1982, the month he was released, he was arrested and a month later pled guilty to robbery (his first strike) and sentenced to four years in prison. In 1984, he was convicted of unlawful driving/taking a vehicle and sentenced to two years in prison. The same year, he was also convicted of escape. In 1985, he was convicted of grand theft and sentenced to three years in prison. In 1988, he was convicted of assault on a peace officer, battery on a peace officer, and thereafter, with another escape, all resulting in another four years eight months in prison. Defendant violated parole and was returned to prison in 1991. When released on parole, he was arrested again in June 1991 and when released again, within months committed a first degree burglary (his second strike), a robbery (his third strike), and vehicle theft in 1992, which resulted in a total prison term of 18 years. He was released from prison in February 2003. Within nine months, in November 2003, defendant was arrested again. In August 2004, he brandished a weapon and was placed on probation for two years, including serving 180 days in jail. In January 2005 and January 2007, he violated that probation and was reincarcerated. Defendant was paroled in April 2007 and committed his current offense eight months later.

Defendant's criminal history was preceded by his delinquency in 1979, for which he was committed to the California Youth Authority.

Defendant has been incarcerated for his current offense of receiving stolen property since December 2007. During this time, defendant has not been written up for prison misconduct. Once a validated member of a prison gang, defendant is now considered by prison officials to be a gang dropout. He has participated in Narcotics Anonymous, art therapy, anger management, education classes, and vocational training.

Defendant filed a petition for resentencing under the Act in February 2013. The People responded in writing that defendant was eligible for resentencing but that the court should not resentence him because he "poses a completely unreasonable risk of danger to public safety." They also argued that if the court were "inclined" to resentence him, "the People instead would request that the original plea [be] withdrawn and the case . . . set for trial on the original charges" because they would "no longer [be] getting the benefit of the bargain." Defendant then filed a supplemental petition detailing his record of rehabilitation since his current incarceration.

At the hearing on defendant's petition, the parties agreed that the burden of proof was with the People to prove by a preponderance of evidence that defendant posed an unreasonable risk of danger to public safety if released. The People relied on the evidence they had previously submitted to the court in their response to defendant's petition for resentencing that included defendant's "969(b) packet," the preliminary examination transcript from the current offense, and the postsentencing report prepared by the probation department from the current offense. They "acknowledge[d] that while in prison, [defendant] has actually been exemplary" but that "does not change that he is an unreasonable risk of danger to the community." Defense counsel argued that defendant was now 51 years old and since being transferred to Mule Creek State Prison in December 2009, "he's worked very diligently toward rehabilitation in those last about three and a half years."

Before announcing its ruling, the court made some "general observations." Its job was to "determine whether resentencing and obviously release would pose an unreasonable risk of danger to public safety. The problem is we're essentially being asked as courts to predict future dangerousness." "[W]e've developed a variety of tools that supposedly have made it easier to . . . predict future dangerousness, none of which is before the Court in this case," such as the "Static 99" and a "variety of other . . . psychological evaluations." It was not "lost on any of us" that "when a person has been sentenced to a life term and comes to court . . . with almost a last grasp at hope for . . .

having their life handed back to them after being sentenced to a life sentence," "it's an awesome responsibility on the parties" and on the court to make that determination.

After making those observations, the court "turn[ed] to what [it] ha[d] before [it]." It was "significant" that defendant had been discipline free for five years and that was one of the facts the court was "directed to consider." But defendant had a "nonstop criminal history" that included violent felonies, specifically, defendant's two robberies and two escapes from confinement. Although the court did not "recall being made aware of any injuries to victims," "any threat of violence to obtain property" carries with it "at least psychological injury." "[O]f greatest concern" was that shortly after serving an 18-year prison commitment, defendant exhibited a weapon. And defendant's current crime of receiving stolen property in 2007 was not remote. "Weighing all of these factors" defendant "would pose an unreasonable risk of danger to public safety" and, thus, the court denied his petition for resentencing.

Defendant timely appealed from that denial.

## DISCUSSION

### I

### *The Term "Unreasonable Risk of Danger to Public Safety" Is Not Void for Vagueness*

Defendant contends that section 1170.126 is unconstitutionally vague because the term "unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) is not defined. We disagree.

■ "The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of 'life, liberty, or property without due process of law,' as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7)." (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567 [20 Cal.Rptr.2d 341, 853 P.2d 507].) "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21].)

■ Defendant fails to satisfy this demanding standard. Under the Act, a defendant who is not otherwise ineligible for resentencing "shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

"In exercising its discretion in subdivision (f), the court may consider:

"(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;

"(2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and

"(3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

█ The meaning of "unreasonable risk of danger to public safety" is made clear by reference to the examples of evidence the trial court may consider in making this determination. To determine unreasonable risk, the trial court may consider any relevant evidence, including a defendant's criminal conviction history and record of discipline and rehabilitation while incarcerated. Far from giving "insufficient guidance" on how to determine unreasonable risk as defendant claims, the statute enumerates factors the court may consider in exercising its discretion.

Defendant insists the term "unreasonable risk of danger to public safety" is vague because the term "unreasonable" is not defined with mathematical precision. He questions whether it "mean[s] a risk of harm that is more likely than not to occur, say a risk greater than 50%? Or is an 'unreasonable risk' one which cannot be eliminated by the use of reasonable or rational analysis?"

█ The critical inquiry, however, is not whether the risk is quantifiable, but rather, whether the risk would be "unreasonable." (§ 1170.126, subd. (f).) " 'The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as "reasonable," "prudent," "necessary and proper," "substantial," and the like. Indeed, a wide spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the "reasonable or prudent" speed to drive his car in the circumstances (Veh. Code, § 22350), while another may be incarcerated in state prison on a conviction of wilful homicide if he misjudges the "reasonable" amount of force he may use in repelling an assault [citation]. As the Supreme Court stated in *Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344, 357 [75 L.Ed. 374, 51 S.Ct. 153], "There is no formula for the determination of reasonableness." Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind.' " (*People v. Morgan* (2007) 42 Cal.4th 593, 606 [67 Cal.Rptr.3d

753, 170 P.3d 129], quoting *People v. Daniels* (1969) 71 Cal.2d 1119, 1128–1129 [80 Cal.Rptr. 897, 459 P.2d 225].)

Here, as we have explained, the meaning of the term "unreasonable risk of danger to public safety" is clear because it can be objectively ascertained by reference to the examples of evidence the trial court may consider in making this determination. There is no merit in defendant's claim otherwise.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment (the court's order denying defendant's petition for resentencing) is affirmed.

Raye, P. J., and Hoch, J., concurred.

A petition for a rehearing was denied October 31, 2014, and appellant's petition for review by the Supreme Court was denied January 21, 2015, S222499.

---

*See footnote, *ante*, page 763.