Filed 3/10/16  P. v. Jimenez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068356 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS272077) |
| ESTEBAN JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (the Act), which went into effect the next day.  (Cal. Const., art. II, § 10,

subd. (a).) In this case, we are asked to interpret a portion of Penal Code[1] section 1170.18, a new sentencing provision created by the Act.

Under section 1170.18, subdivision (a), "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case" and request resentencing. Here, Esteban Jimenez filed a motion to be resentenced under section 1170.18, subdivision (a). There is no dispute that Jimenez satisfies the criteria under that subdivision. However, the superior court declined to resentence Jimenez because it determined that Jimenez would pose an unreasonable risk of danger to public safety. (See § 1170.18, subd. (b).) Jimenez challenges that determination.

Jimenez contends the superior court misconstrued the unreasonable risk of danger to public safety "test" and that, considering the correct interpretation of that test, Jimenez's circumstances do not support any determination that he would be an unreasonable risk to public safety under section 1170.18, subdivision (b). In the alternative, Jimenez maintains that section 1170, subdivision (b) is unconstitutionally vague and violates his federal due process rights.

Jimenez's contentions present an issue of first impression. Neither party has cited any authority that has interpreted section 1170, subdivision (b). Our independent

---

[1] Statutory references are to the Penal Code unless otherwise specified.

2

research has not found any as well. We are aware that multiple cases involving the Act are currently pending before our high court. However, none of these cases involve the precise issue before us, but it is possible that those cases could impact the instant matter in some way. We thus proceed cautiously with this case and look forward to the Supreme Court's guidance on the Act in the near future.

We determine that there is no merit to Jimenez's challenge to the Act. We conclude the superior court properly applied section 1170.18, subdivision (b) to Jimenez and did not abuse its discretion in finding that he was not eligible for resentencing because he was an unreasonable risk of danger to public safety. Likewise, Jimenez's constitutional attack on the Act fares no better. The language the voters approved in section 1170.18, subdivision (b), namely the unreasonable risk of danger to public safety is similar to language in other statutes and has been used in a variety of circumstances under California law. We therefore determine that section 1170.18, subdivision (b) is not unconstitutionally vague and Jimenez's due process challenge fails. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 2014, police officers recognized Jimenez in the passenger seat of his girlfriend's car and conducted a stop because they knew a warrant had been issued for his arrest due to a parole violation. The occupants were ordered to place their hands outside the car, but twice Jimenez pulled his hands back into the car. An officer observed Jimenez throw three small bindles of marijuana, methamphetamine, and heroin out of the

3

window.  Jimenez's girlfriend was in the driver's seat and her three-year-old son was in the back seat of the car.

On May 14, 2014, the San Diego County District Attorney's Office charged Jimenez with two counts of possession of a controlled substance (Health & Saf. Code, §§ 11350, subd. (a), 11377, subd. (a)).  It was further alleged that he had one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, 668), three prison priors (§§ 667.5, subd. (b), 668), and four probation denial prior felony convictions (§ 1203, subd. (e)(4)).

On July 25, 2014, Jimenez pled guilty to both counts and admitted all prior conviction allegations.

On August 21, 2014, Jimenez was sentenced to 32 months in prison.  The sentence included a concurrent low term of 16 months for each count, doubled due to the prior strike conviction.  The court struck the other prior allegations for purposes of sentencing.

On November 17, 2014, Jimenez filed a petition for recall of sentence under the Act.  In support of his petition, Jimenez presented evidence of the education program he completed and a letter of support from his fiancé, explaining that Jimenez is needed at home to help raise their children.  The petition stated Jimenez had been employed in prison, was motivated to take care of his family, and had not sustained a parole violation since July 15, 2011.

In opposition to the petition, the People agreed that Jimenez was eligible for relief (§ 1170.18, subd. (i)), but argued that he posed an unreasonable risk of committing one of the enumerated "super strikes" (§ 667, subd. (e)(2)(C)(iv)).  Specifically, the People argued that he would commit attempted murder.  In support of their argument, the

4

People described Jimenez as a "gangster" whose history "is replete with ties to his gang, the use and possession of weapons, and bloodshed."

The People also emphasized Jimenez's criminal history. Jimenez had a strike conviction for assault with a deadly weapon (§ 245, subd. (a)(1)), which stemmed from a February 5, 2012, incident when Jimenez approached a stranger and "stabbed the victim in the abdomen for no apparent reason." The wound was an inch deep and spanned two to three inches of the victim's torso. When the victim attempted to defend himself, two of Jimenez's fellow gang members attacked the victim while yelling their gang's name, "Old Town National City." As a result, Jimenez was charged with attempted murder (§§ 187, subd. (a), 664) and assault with a deadly weapon (§ 245, subd. (a)(1)). It was alleged he committed the crimes to benefit his gang (§ 186.22, subd. (b)(1)), and that the crimes were serious felonies (§ 1192.7, subds. (c)(8) & (c)(23)). Ultimately, Jimenez pled guilty to assault with a deadly weapon and the serious felony allegation (§ 1192.7, subd. (c)(23)), and was sentenced to four years in prison. He later violated the terms of his parole in that case.

The People also presented evidence that Jimenez had an extensive adult criminal history leading up to the strike offense: a prison prior in 2009 (§ 4502, subd. (b)), manufacture of a dirk or dagger in prison (after two prisoners attacked a third inmate by stabbing him 16 times, Jimenez recovered the weapon, ran to the bathroom and flushed it); another prison prior in 2009 (§ 12022, subd. (a)(1)), possession of brass knuckles (police conducting a probation compliance search saw Jimenez throw a loaded syringe onto the floor and crawl out the bedroom window while in possession of brass knuckles);

5

possession of ammunition by a prohibited person in 2006 (§ 12316, subd. (b)(1));

contempt of court in 2006 (§ 166, subd. (a)(4); Jimenez was found with two other

documented gang members and thus found in violation of a court-ordered gang

injunction); a prison prior in 2005 (Veh. Code, § 10851, subd. (a), taking a vehicle

without consent (Jimenez was found driving a stolen truck)); possession of a controlled

substance in 2005 (Health & Saf. Code, § 11377, subd. (a)); possession of less than an

ounce of marijuana in 2004 (Health & Saf. Code, § 11357, subd. (b)).

The People also noted that Jimenez violated probation or parole in every case in

which he was placed under supervision. For his 2005 prison prior, Jimenez's probation

was revoked six times before he was placed on parole in 2007, and he violated the terms

of his parole in 2009. He violated parole on his 2009 convictions as late as September

2011 and violated parole on his strike conviction in May 2014.

The People maintained Jimenez had a violent adult record while in prison. Aside

from the 2009 incident involving him disposing of a slashing weapon after an attack on

an inmate, Jimenez was administratively disciplined in 2008 for physically attacking

another inmate. Four months earlier, Jimenez was disciplined after attacking an inmate

on the basketball court. Finally, in September 2007, Jimenez was placed in

administrative segregation after attacking an inmate because the disciplinary committee

concluded that " 'release to the general population at this time would jeopardize the safety

and security of the institution.' "

Jimenez's criminal behavior began as a juvenile. In February 2002, as a teenager,

a true finding was made that Jimenez committed vandalism (§ 594, subds. (a) &

6

(b)(2)(A)) after he tagged his gang's name and moniker on a park wall. In May 2002, a true finding was made that he committed second degree burglary (§ 459). In October 2001, Jimenez brandished a metal pipe at a man and threatened to strike the victim if he did not give him his wallet. Though Jimenez did not strike the victim with the pipe, the victim was punched in the face (by either Jimenez or the juvenile with him). As a result, Jimenez was convicted of attempted robbery and sentenced to various terms including gang conditions.

The People asserted that Jimenez's violent behavior as a teenager continued when in custody. For example, in 2002, he was disciplined several times: fighting (May, July and Aug. 2002), gang-related fighting (May and Oct. 2002), and killing a bird (Aug. 2002). Jimenez claimed to have joined the Old Town National City gang at age 10. He also started drinking alcohol at that time. He began using marijuana a year later.

Additionally, the People highlighted criminal activity that did not result in a conviction. In 2005 when on parole, Jimenez jumped from a car after it was pursued and ran from police. Also in 2005, Jimenez was stopped by officers while riding a bicycle and admitted smoking methamphetamine that day. In 2002, officers stopped a car after a bottle was thrown from the car at a passing motorist. Sixteen-year-old Jimenez was in the car and so intoxicated he could not walk without assistance.

The court held a hearing on Jimenez's petition. At the hearing, Jimenez's attorney attempted to minimize Jimenez's previous criminal activity, arguing that Jimenez was not an unreasonable risk of danger to public safety.

At the hearing, the superior court considered Jimenez's petition, the People's opposition, the defense's brief in support of the petition, and the probation officer's report prepared for the original sentencing.  Noting the high standard set for any court to disqualify a person from the Act's benefits, the court explained it was the People's burden to prove by a preponderance of the evidence that Jimenez posed an unreasonable risk.  The court defined an unreasonable risk as a "demonstrated [] substantial danger, a serious and well-founded risk, that the individual will commit super strike crimes" if released.  The court explained that a chance or mere possibility that Jimenez would commit an enumerated offense would not satisfy the standard.

The court ultimately denied the petition as follows:

> "Mr. Jimenez is an individual who has yet to enjoy his 30th birthday that's coming up shortly.  In his short life, commencing as a juvenile, he has shown a propensity for persistent criminality.  Consistent with that criminality there is also a consistent or persistent use of force with violence that is characteristic of his interactions when free in the community, and ironically it does not seem to be abated by incarceration.  In fact, it is more pronounced as being his means of expressing himself.  [¶]  In addition to the persistent criminality and persistent use of violence, there are two significant events in his life that this court deems to be extremely important.  One was he did utilize a knife on another human being resulting in serious injuries for which he was convicted.  In addition, during his time in the institution, he participated in a stabbing incident.  It is noted that his participation is somewhat limited, but he did participate, took the stabbing instrument attempting to dispose of it to protect those that were utilizing it.  [¶]  On balance, Mr. Jimenez is an individual that this court is convinced that he is likely to engage in violence with a weapon if free in the community.  The court deems his record, as I review it in totality, as one which does present a substantial danger and serious well-founded risk that he would likely commit a super strike if free in the community.  That risk of danger is unreasonable under the circumstances and the petition accordingly is denied."

8

Jimenez timely appealed.

DISCUSSION

"Proposition 47 'was intended to reduce penalties "for certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors." ' " (*T.W. v. Superior Court* (2015) 236 Cal.App.4th 646, 652.) " 'In interpreting a voter initiative . . . we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.] In other words, 'our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure.' " (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)

As established by the Act, section 1170.18 created a procedure by which eligible defendants currently serving felony sentences for certain drug possession and theft offenses may petition to recall their sentences and seek resentencing to reduce those offenses to misdemeanors. "Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47. [Citation.] A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a

9

misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' [Citation.] Subdivision (c) of section 1170.18 defines the term 'unreasonable risk of danger to public safety,' and subdivision (b) of the statute lists factors the court must consider in determining 'whether a new sentence would result in an unreasonable risk of danger to public safety.' " (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092.)

Here, there is no dispute that Jimenez pled guilty to felonies that would qualify to be resentenced as misdemeanors under section 1170.18, subdivision (a). As such, we need not interpret that subdivision. Instead, we focus on subdivisions (b) and (c).

Section 1170.18, subdivision (b) sets forth the criteria for the superior court to consider, in its discretion, to determine whether a petitioner is an unreasonable risk of danger to public safety. The factors are as follows:

> "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes.
>
> "(2) The petitioner's disciplinary record and record of rehabilitation while incarcerated.
>
> "(3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b)(1)-(3).)

In addition, section 1170.18, subdivision (c) further defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new"

10

super strike offense, such as murder, rape, or child molestation.  (§§ 1170.18, subd. (c);

667, subd. (e)(2)(C)(iv).)[2]

Here, Jimenez contends the superior court erred in two ways.  First, he asserts the

court misconstrued the unreasonable risk test found in section 1170.18, subdivision (b),

and as such, applied the wrong test.  Specifically, he claims the court applied a test based

on "an unrelated statutory standard applicable only to sexually violent predators."

Second, Jimenez maintains that his circumstances do not support that he is an

unreasonable risk under the correct test.  We reject both of these contentions.

As a threshold matter, we note that the plain language of section 1170.18,

subdivision (b) calls for an exercise of the sentencing court's discretion.  " 'Discretion is

the power to make the decision, one way or the other.' "  (*People v. Carmony* (2004) 33

---

[2]     Section 1170.18, subdivision (c) provides:  " '[U]nreasonable risk of danger to
public safety' means an unreasonable risk that the petitioner will commit a new violent
felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of
subdivision (e) of Section 667."
     Section 667, subdivision (e)(2)(C)(iv), in turn, lists the following super-strike
offenses:  "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of
the Welfare and Institutions Code.  [¶]  (II) Oral copulation with a child who is under 14
years of age, and who is more than 10 years younger than he or she as defined by Section
288a, sodomy with another person who is under 14 years of age and more than 10 years
younger than he or she as defined by Section 286, or sexual penetration with another
person who is under 14 years of age, and who is more than 10 years younger than he or
she, as defined by Section 289.  [¶]  (III) A lewd or lascivious act involving a child under
14 years of age, in violation of Section 288.  [¶]  (IV) Any homicide offense, including
any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. [¶] (V)
Solicitation to commit murder as defined in Section 653f.  [¶]  (VI) Assault with a
machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision
(d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in
paragraph (1) of subdivision (a) of Section 11418.  [¶]  (VIII) Any serious and/or violent
felony offense punishable in California by life imprisonment or death."

Cal.4th 367, 375.)  "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; italics omitted; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)  " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination . . . will not be set aside on review." ' " (*Carmony*, *supra*, at pp. 376-377.) In addition, a " ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily . . . without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)  "An abuse of discretion is shown when the trial court applies the wrong legal standard." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

12

Here, Jimenez argues the superior court abused its discretion when it applied the wrong legal standard, namely the standard used to determine if a defendant is a sexually violent predator. To this end, Jimenez focuses on specific words the superior court used in explaining its determination that Jimenez would pose an unreasonable risk of danger to public safety if resentenced. For example, in considering Jimenez's petition under the Act, the superior court explained: "In my judgment, the type of risk that is an unreasonable risk can only be presented to the court when there is demonstrated a substantial danger, a serious and well-founded risk, that the individual will commit super strike crimes if free in the community." Jimenez points out that appellate courts, including our Supreme Court, have used the terms "substantial danger" and "serious and well-founded risk" in construing portions of the Sexually Violent Predators Act (SVPA, Welf. & Inst. Code, § 6600 et seq.). He is correct. (See *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 922 (*Ghilotti*).) Nevertheless, the fact that the superior court used such language is not of the moment.

In *Ghilotti*, our high court interpreted the phrase "likely to engage in acts of sexual violence" as used in Welfare and Institutions Code section 6601, subdivision (d). In doing so, the court found that phrase "connotes much more than the mere *possibility* that the person will reoffend as a result of a predisposing mental disorder that seriously impairs volitional control. On the other hand, the statute does not require a precise determination that the chance of reoffense is *better than even*. Instead, an evaluator applying this standard must conclude that the person is 'likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual

13

behavior, the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community." (*Ghilotti*, *supra*, 27 Cal.4th at p. 922, original italics.)  Also, the court made clear that it was not persuaded "that a valid involuntary commitment law requires proof that the person is *more likely than not* to reoffend."  (*Id*. at p. 923, original italics.)

Jimenez contends the superior court's use of the SVPA to interpret unreasonable risk of danger to public safety under the Act was improper for two reasons.  First, Jimenez emphasizes the purpose of the SVPA is to "fill up state institutional spaces (i.e., state hospitals) with certain identified violent sex offenders" while, in contrast, the Act's purpose is to "free up state institutional spaces . . . now occupied by nonserious, nonviolent felons who should be treated as misdemeanants and released sooner rather than later from incarceration."  Although we do not quibble with Jimenez's description of the Act's purpose (see *T.W. v. Superior Court, supra,* 236 Cal.App.4th 646, 652), the portion of the Act at issue, section 1170.18, subdivision (b), provides the court with the discretion to conclude that a petitioner, who otherwise qualifies to have his sentence reduced under the Act, should not be released earlier because he or she would pose an unreasonable risk of danger to public safety.  (See §1170.18, subd. (b).)  In other words, the portion of the Act Jimenez challenges here, much like Welfare and Institutions Code section 6601, subdivision (d), provides a standard by which a court must evaluate a defendant to determine if he or she poses a certain type of danger to society.  As such, we are not troubled that the superior court invoked the terms "substantial danger" and "serious and well-founded risk" in denying Jimenez's petition under the Act.

14

Second, Jimenez maintains that by using the SVPA as a guide to interpret section 1170.18, subdivision (b)'s "unreasonable risk" language, the court "set[] a significantly lower bar . . . to exclude a large group of eligible people from the benefits of misdemeanor resentencing than the Act intends." To this end, Jimenez asserts that "unreasonable" means, in "everyday usage," "excessive" or "immoderate." Armed with this definition, Jimenez concludes, "[c]ommonsensically, a risk that something is less likely to occur than not cannot be called an excessive or immoderate risk by any stretch of the imagination." Essentially, Jimenez argues that the phrase "unreasonable risk of danger to public safety," as used in section 1170.18, subdivision (b), requires a court to find that a petitioner is more likely than not to commit a super strike if released early. We find no support for this urged interpretation.

The Act does not create the phrase "unreasonable risk of danger to public safety" out of whole cloth. This same phrase can be found in section 1170.126, subdivision (f) as added by the Three Strikes Reform Act of 2012. That subdivision gives a court discretion to deny a petition for resentencing under the Three Strikes Reform Act if the court "determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

We observe "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation]. 'This principle applies to legislation enacted by initiative.' " (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1015; accord, *In re Lance W.* (1985) 37 Cal.3d

873, 890, fn. 11.)  Thus, we presume voters were aware "unreasonable risk of danger to

public safety," as used in section 1170.126, subdivision (f), had been judicially construed

as not being impermissibly vague, but as nevertheless having no fixed definition.[3]  (See

*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770 (*Garcia*); *People v. Flores* (2014)

227 Cal.App.4th 1070, 1075 (*Flores*).)

As such, if the drafters had intended to require a court to find that a petitioner was

more likely than not to commit a super strike to be found to be an unreasonable risk of

danger to public safety, they could have written the Act as such.  They did not. We

cannot read into a statute qualifications or modifications that will materially affect its

operation as to conform to a supposed intention not expressed by the voters.  (See *Taylor*

*v. McKay* (1975) 53 Cal.App.3d 644, 651-652; *Ogle v. Heim* (1968) 69 Cal.2d 7, 9.)

The Act's provision that allows a court to determine if a petitioner presents an

unreasonable risk of danger is nothing new in California law.  (See *In re Shaputis*, *supra*,

53 Cal.4th at p. 219; *Garcia*, *supra*, 230 Cal.App.4th at pp. 769-770; *Flores*, *supra*, 227

Cal.App.4th at p. 1075.)  The Act merely asks the court to make a dangerousness

determination.  A dangerousness determination is a factual inquiry guided by a superior

court's review of certain enumerated criteria.  Under the Act, the court must determine

---

3      In addition, similar language is found elsewhere in California law.  For example,
in reviewing a decision by the California Board of Parole to deny a prisoner parole, an
appellate court considers only "whether some evidence supports the ultimate conclusion
that the inmate poses an unreasonable risk to public safety if released." (*In re Shaputis*
(2011) 53 Cal.4th 192, 219.)  Jimenez has not provided us with any authority wherein the
unreasonable risk within the parole context requires a more likely than not finding of
dangerousness.  Our independent research has not uncovered any either.

whether an unreasonable risk exists that the petitioner will commit a new super strike offense, such as murder, rape, or child molestation, if he is released from prison early. (§ 1170.18, subds. (b), (c).) Further, the Act specifically tells the court what factors to consider. (See § 1170.18, subd. (b).) There is no indication in the record, and Jimenez has not persuaded us otherwise, that the superior court did not consider the appropriate factors. And the fact that the court, here, in making the dangerousness determination, said certain words that have been used in the SVPA context does not mean that it applied the wrong test.

Having concluded that the superior court did not apply the wrong test, we next analyze whether the court abused its discretion in finding Jimenez was not eligible for resentencing under the Act because he posed an unreasonable risk of danger. We conclude the court did not abuse its discretion.

Jimenez possesses a long criminal history marked with violence. He joined a criminal street gang at age 10. He, while armed with a metal pipe, attempted to rob a person. He stabbed a person in the stomach with a knife, was charged with attempted murder, and ultimately pled guilty to assault with a deadly weapon, serving four years in prison. During his prison sentence, Jimenez flushed a stabbing weapon down the toilet that had been used to stab another inmate 16 times.

While incarcerated, Jimenez has a history of physical violence, including three attacks on other inmates. Even as a juvenile, Jimenez's time in custody was littered with various acts of physical violence, such as fighting and killing a bird.

17

Despite multiple instances of physical violence, Jimenez nevertheless maintains that the superior court's finding that he was an unreasonable risk to commit a super strike constituted an abuse of discretion because he has never been convicted of a specific intent crime. However, there is no such required finding under the Act. Instead, section 1170.18, subdivision (b) tasks the superior court with determining whether a petitioner is an unreasonable risk of danger to public safety by considering the petitioner's criminal history, disciplinary record while incarcerated, and any other relevant evidence. (§ 1170.18, subd. (b).) There is nothing that requires a petitioner to have been convicted of or pled guilty to a specific intent crime.

In short, we are satisfied that the superior court's finding that resentencing Jimenez would pose an unreasonable risk of danger to public safety was not arbitrary, irrational, or capricious. The court therefore did not abuse its discretion.

Jimenez next challenges the Act on constitutional grounds. He insists that section 1170.18, subdivision (b), specifically the phrase "unreasonable risk of danger to public safety" is unconstitutionally vague, and thus, violates his federal due process rights. We disagree.

"The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of 'life, liberty, or property without due process of law,' as assured by both the federal Constitution [citation] and the California Constitution [citation].)" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567.) The government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that

18

it invites arbitrary enforcement. (*Kolender v. Lawson* (1983) 461 U.S. 352, 357-358.) "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 484.)

No appellate court in California has addressed the constitutionality of section 1170.18, subdivision (b). However, there are two reported cases wherein an appellant challenged analogous language found in the Three Strikes Reform Act of 2012. In *Garcia*, *supra*, 230 Cal.App.4th 763, the appellant contended that section 1170.126 was unconstitutionally vague because the term "unreasonable risk of danger to public safety" was not defined. (*Garcia, supra,* at p. 768.) In finding that the term was not unconstitutionally vague, the court noted that the meaning of "unreasonable risk of danger to public safety" is made clear by reference to examples of evidence the superior court could consider in making the determination. (*Id*. at p. 769.) The criteria set forth in section 1170.126, subdivision (f) is identical to that found in section 1170.18., subdivision (b). (See §§ 1170.126, subd. (g); 1170.18, subd. (b).)

In addition, the court in *Garcia, supra,* 230 Cal.App.4th 763, emphasized that "unreasonable risk of danger to public safety did not have to be defined with mathematical precision to avoid being unconstitutionally vague. The court explained:

> "The critical inquiry, however, is not whether the risk is quantifiable, but rather, whether the risk would be 'unreasonable.' [Citation.] ' "The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' 'substantial,' and the

19

like. Indeed, a wide spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the 'reasonable or prudent' speed to drive his car in the circumstances [citation], while another may be incarcerated in state prison on a conviction of willful homicide if he misjudges the 'reasonable' amount of force he may use in repelling an assault [citation]. As the Supreme Court stated in *Go–Bart Importing Co. v. United States* (1931) 282 U.S. 344, 357 . . . , 'There is no formula for the determination of reasonableness.' Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." ' " (*Garcia*, *supra*, at pp. 769-770.)

Similarly, in *Flores*, *supra*, 237 Cal.App.4th 1070, the court determined that the word "unreasonable" as used in the phrase "pose an unreasonable risk of danger to public safety" in section 1170.126, subdivision (f) was not impermissibly vague. (*Flores*, *supra*, at p. 1074.) The court reasoned, "[s]urely a superior court judge is capable of exercising discretion, justly applying the public safety exception and determining whether a lesser sentence would pose an unreasonable risk of harm to public safety." (*Id.* at p. 1075.)

In his reply brief,[4] Jimenez argues that we should not follow *Garcia*, *supra*, 230 Cal.App.4th 763 or *Flores*, *supra*, 227 Cal.App.4th 1070 because they concern a different statute. We are not persuaded. Instead, we find the reasoning in both *Garcia* and *Flores* instructive. The challenged language in section 1170.18, subdivision (b) is identical to the language challenged in *Garcia* and *Flores* except the language in the former is more specific. The phrase "unreasonable risk of danger to public safety" in section 1170.18. subdivision (b) is further defined in section 1170.18, subdivision (c). (See § 1170.18,

---

[4]    Jimenez did not cite or discuss *Garcia*, *supra*, 230 Cal.App.4th 763 or *Flores*, *supra*, 227 Cal.App.4th 1070 in his opening brief.

20

subdivision (c) ["As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."].)  As such, we follow *Garcia* and *Flores* to conclude section 1170.18, subdivision (b) is not unconstitutionally vague.  It provides the superior court with specific criteria to consider and further instructs the court that to find a petitioner an unreasonable risk of danger to public safety, it must determine that there exists an unreasonable risk that the petitioner will commit a super strike.  Such a task is well within the capability of a superior court judge.  (See *Flores*, *supra*, at p. 1075.)

We also are not swayed by Jimenez's reliance on *Johnson v. United States* (2015) 576 U.S. ___; 135 S.Ct. 2551 (*Johnson*).  That case addressed whether the residual clause of the Armed Career Criminal Act of 1984 (ACCA; 18 U.S.C. § 924(e)(2)(B)), violated the Constitution's prohibition of vague criminal laws.  Under the ACCA, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has "three or more previous convictions for a 'violent felony,' a term defined to include any felony that *'involves conduct that presents a serious potential risk of physical injury to another*.' "[5] (*Johnson*, *supra*, at p. 2555; italics added.)  The italicized words of this

---

[5]    The ACCA defines "violent felony" as follows:  "any crime punishable by imprisonment for a term exceeding one year . . . that -- [¶] (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or [¶] (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious injury to another."  (18 U.S.C. § 924(e)(2)(B).)

definition have come to be known as the ACCA's residual clause. (*Johnson*, *supra*, at p. 2556.)

The United States Supreme Court determined that the ACCA's residual clause was unconstitutionally vague. It observed that the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." (*Johnson*, *supra*, 135 S.Ct. at p. 2557.)

The court was troubled that the residual clause left "grave uncertainty about how to estimate the risk posed by a crime." (*Johnson*, *supra*, 135 S.Ct. at p. 2557.) The court also was bothered that the residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." (*Id*. at p. 2558.) The court commented, "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." (*Ibid*.)

None of the concerns plaguing the court in *Johnson*, *supra*, 135 S.Ct. 1551 are present here. Importantly, while the ACCA could increase a defendant's sentence, the Act operates to reduce a sentence. The ACCA allows federal courts to punish certain defendants more harshly. Indeed, the Supreme Court was especially concerned about the potential to increase a defendant's sentence under the ACCA. The court held that "[i]ncreasing a defendant's sentence under the [residual] clause denies due process of law." (*Johnson*, *supra*, at p. 2557.) Here, the Act does not involve the potential to increase a defendant's punishment. To the contrary, the Act operates to potentially lower a defendant's sentence that was found proper and warranted under the existing law. Therefore, in the instant matter, the superior court did not increase Jimenez's sentence.

22

Instead, the court merely determined that the sentence should not be shortened. Moreover, unlike the appellant in *Johnson*, Jimenez does not argue that he was improperly sentenced in the first instance. Based on this critical distinction alone, we find *Johnson* unhelpful in the instant matter.[6]

Moreover, the Act does not require a court to estimate the risk associated with a crime in the abstract or to determine how much risk it takes for a crime to qualify as a violent crime. Instead, section 1170.18, subdivisions (b) and (c) inform the court that it must determine whether petitioner is an "unreasonable risk" to commit a super strike if resentenced to a lesser sentence based on certain criteria. Simply put, the Act does not invite arbitrary enforcement as the Supreme Court determined the ACCA did. *Johnson*, *supra*, 135 S.Ct. 2551 does not support Jimenez's position.

As part of Jimenez's constitutional challenge to section 1170.18, subdivision (b), he urges this court to judicially construe the subdivision to require the People to prove a petitioner is an "unreasonable risk of danger to public safety" by clear and convincing evidence. He contends this requirement is necessary to save subdivision (b) from being unconstitutionally vague. Because we determine the challenged subdivision is not unconstitutionally vague, we need not address this issue. That said, we find nothing in the Act or any authority construing the Act that suggests that the People's burden of

---

6     In addition, the United States Supreme Court was concerned that the ACCA's residual clause denies fair notice regarding what conduct a defendant needs to avoid. (See *Johnson*, *supra*, 135 S.Ct. at p. 2557.) In other words, the residual clause leaves defendants to guess at what conduct could result in more severe sentences. Here, there is no analogous concern under the Act where a defendant is not subject to a more severe sentence based on a vague statute.

proving a defendant an unreasonable risk of danger to public safety would require anything more than proof by a preponderance of the evidence.

DISPOSITION

The order is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.